**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By cking at 10:47 am, May 24, 2010

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Waycross Division

| | | |
|---|---|---|
| IN RE: ) | CHAPTER 11 CASE | |
| DIVERSIFIED TRAFFIC ) | NUMBER <u>09-51227</u> | |
| SERVICES, INC. ) | | |
| ) | | |
| Debtor ) | | |
| _____) | | |
| DIVERSIFIED TRAFFIC ) | | |
| SERVICES, INC. ) | | |
| ) | | |
| Debtor/Movant ) | | |
| ) | | |
| vs. ) | | |
| ) | | |
| PRESIDENTIAL FINANCIAL ) | | |
| CORPORATION ) | | |
| ) | | |
| Creditor/Respondent ) | | |

### MEMORANDUM OPINION AND ORDER

This matter is before me on the Motion to Reject Security Agreement and Financing Statement, or in the Alternative, to Avoid Lien ("Motion"), filed by Debtor Diversified Traffic Services, Inc. ("Diversified Traffic"). At issue is a security interest created prepetition and asserted by Creditor Presidential Financial Corporation ("PFC") in accounts receivable generated postpetition under three contracts. The

�später AO 72A
(Rev. 8/82)

Debtor asserts that the contracts were entered into postpetition and that consequently, no prepetition security interest would attach to accounts receivable under those contracts. In addition, the Debtor asserts—and PFC does not dispute—that six other contracts were entered into postpetition.

The question is what date determines whether the contracts are prepetition or postpetition: the date the contracts were signed or the subsequent date of a Notice to Proceed. I conclude that the date the contracts were signed determines whether the contracts are pre- or postpetition. Because all three of the contracts at issue were signed prepetition, PFC's prepetition security interest extends to accounts receivable generated under those three contracts. The Motion is therefore denied as to the three contracts at issue and granted as to the six contracts that PFC does not dispute.

## BACKGROUND

Diversified Traffic is a highway striping company whose business is painting the lines on roads, generally as a subcontractor hired by the principal contractor for state-funded road construction projects. On November 13, 2009, Diversified

Traffic filed a petition under chapter 11 of the Bankruptcy Code. Diversified Traffic continues to operate its business as a debtor in possession.

Approximately two-and-a-half years before its bankruptcy filing, Diversified Traffic entered into a security and loan agreement ("Security Agreement") with PFC. Under the Security Agreement, Diversified Traffic was extended a line of credit and PFC was granted a security interest in collateral that included "Receivables," defined to include contract rights and accounts receivable (Loan Agreement and Security Agreement ¶ 2(a), Dkt. No. 18-1).[1] The collateral also included "Proceeds," including "any and all proceeds in the form of Receivables." (Id. ¶ 2(g)). Neither party disputes that under applicable law, PFC's security interest extends to accounts receivable generated under prepetition contracts.[2] The parties disagree, however, about whether three particular contracts are prepetition or postpetition.

At hearing on the Motion, an officer of Diversified Traffic, Neal Howard, testified that a subcontract is "awarded"

---

[1] All docket citations refer to the docket in this case.

[2] The parties contractually agreed that Georgia law governs their rights and obligations under the Security Agreement. (See Dkt. No. 18-1 at 9.)

when Diversified Traffic receives a Notice to Proceed from the principal contractor. Accordingly, Diversified Traffic argues that it is the date of the Notice to Proceed that controls whether its contract with the principal contractor is prepetition or postpetition, not the date the contract itself was signed. Howard further testified that fourteen bids by Diversified Traffic had been accepted since the filing of the bankruptcy case, as shown on what appeared to be a two-page Georgia Department of Transportation report ("DOT Report") listing contracts as of 12/14/2009 and 1/15/2010. The DOT Report was entered into evidence as Debtor's Exhibit No.1 ("D1").

At the conclusion of the hearing, I took this matter under advisement. I asked the parties to confer and, to the extent possible, submit a joint stipulation as to which contracts are at issue, as well as to submit copies of the contracts. I further asked them to stipulate to the amount of money Diversified Traffic owes under the Security Agreement, the extent of PFC's security interest, and the value of other collateral for a determination of whether PFC is adequately protected.

The parties did not, however, submit a joint stipulation. Instead, each party separately submitted a letter

brief with exhibits. On the question of which contracts are prepetition and which contracts are postpetition, which is the only question I consider here, Diversified Traffic submitted the following documents, identified in its letter brief as "all postpetition contracts" (Dkt. No. 50 at 1) and listed here in date order:

- Subcontract, dated July 24, 2009
    Bulloch/Candler Counties
    Project ## BR000-0002-00(841)01 &
            BR000-0002-00(842)01
    Amount of subcontract: $19,207.40
    ("Bullock/Candler Contract")
    (Dkt. No. 50-5 at 2-6.)

- Subcontract, dated Aug. 6, 2009
    Tattnal County
    Project # BR000-0001-00(364)01
    Amount of subcontract: $9,579.10
    ("Tattnal Contract")
    (Id. at 7-14.)

- Letting information, dated Oct. 16, 2009
  Letter bid by Diversified Traffic, dated Oct. 21, 2009
    Chatham County
    Project # 0008-00(651)
    Amount of bid: $62,000.00
    ("Chatham Contract")
    (Id. at 44-45.)

- Notice to Proceed, dated Nov. 16, 2009
    Pierce County
    Project # CSSFT008-00(974)
    Amount of subcontract: Not shown on Notice to Proceed, but shown on D1 as $66,942.00
    ("Pierce Contract")

(Id. at 1.)

- Subcontract, dated Jan. 22, 2010
  Ben Hill-Turner Counties
  Project ## 0009500 & 0009531
  Amount of subcontract: $7,756.50
  ("Ben Hill-Turner Contract")
  (Id. at 15-22.)

- Subcontract, dated Jan. 22, 2010
  Tift County
  Project # 0009514
  Amount of subcontract: $14,002.50
  ("Tift Contract")
  (Id. at 23-29.)

- Subcontract, dated Jan. 25, 2010
  Colquitt County
  Project # 0009502
  Amount of subcontract: $7,672.75
  ("Colquitt Contract")
  (Id. at 30-36.)

- Subcontract, dated Jan. 25, 2010
  Cook County
  Project # 0009503
  Amount of subcontract: $4,337.50
  ("Cook Contract")
  (Id. at 37-43.)

- Subcontract, dated Jan. 25, 2010
  Dooly County
  Project # 0009490
  Amount of subcontract: $4,092.83
  ("Dooly Contract")
  (Id. at 46-52.)

The list shows that only seven of the nine documents submitted as contracts actually are contracts. All seven

AO 72A
(Rev. 8/82)

contracts provide that the entire agreement between the parties is set forth therein.[3]

PFC did not submit any documents relevant to the question of which contracts are prepetition and which contracts are postpetition. In its letter brief, however, PFC asserted that the following three contracts submitted as postpetition contracts by Diversified Traffic are instead prepetition contracts: Pierce County, Bulloch/Candler County, and Tattnal County.[4] PFC does not dispute that the other six contracts submitted by Diversified Traffic are postpetition: Ben Hill-Turner Contract, Tift Contract, Colquitt Contract, Cook Contract, Dooly Contract, and Chatham Contract.

## DISCUSSION

Under the Bankruptcy Code, property acquired by the debtor after the case commences is not subject to liens arising from security agreements entered into before the case commenced.

---

[3] See Bulloch/Candler Contract, Art. XII B, Dkt. No. 50-5 at 6; Tattnal Contract ¶ 37, id. at 14; Ben Hill-Turner Contract, unnumbered paragraph, id. at 22; Tift Contract, unnumbered paragraph, id. at 29; Colquitt Contract, unnumbered paragraph, id. at 36; Cook Contract, unnumbered paragraph, id. at 43; Dooly Contract, unnumbered paragraph, id. at 52.

[4] PFC also asserted that a "Turner County" contract was pre-petition. I do not have a Turner County contract before me, however. I have only a Ben Hill-Turner Contract, which I conclude is not the contract to which PFC refers, because the Ben Hill-Turner Contract bears a postpetition date on its face.

11 U.S.C. § 552(a). An exception applies to postpetition proceeds of prepetition collateral. A prepetition lien may extend to postpetition proceeds depending on the provisions of the security agreement and applicable nonbankruptcy law, as well as on the equities of the case:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds . . . of such property, then such security interest extends to such proceeds . . . acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

## I.
### Postpetition Accounts Receivable Are Proceeds of Prepetition Contract Rights.

Here, PFC's security interest extends to postpetition accounts receivable as proceeds of prepetition collateral. Accounts receivable are "proceeds" under the terms of the Security Agreement. The accounts receivable, as proceeds, arise

from the prepetition collateral of the Debtor's contract rights under prepetition highway striping contracts.

Both "proceeds" and "accounts" are defined by Georgia law. Article 9 of the Uniform Commercial Code as codified in the Commercial Code of Georgia defines "proceeds" in relevant part as "rights arising out of collateral," O.C.G.A. § 11-9-102(a)(63)(C). An "account" is defined as "a right to payment of a monetary obligation, whether or not earned by performance . . . for services rendered or to be rendered." O.C.G.A. § 11-9-102(a)(2).

Thus, under the relevant provisions of the Security Agreement and under Georgia law, accounts receivable generated postpetition are rights to payment arising out of rights defined in prepetition contracts. Accordingly, accounts receivable under prepetition contracts are proceeds to which PFC's security interest extends under § 552(b)(1).

The identity of postpetition accounts receivable as proceeds of contract rights distinguishes this matter from the case that Diversified Traffic relies on in the Motion. See <u>First Nat'l Bank of Lafayette v. Texas Tri-Collar, Inc. (In re Texas Tri-Collar, Inc.)</u>, 29 B.R. 724 (Bankr. W.D. La. 1983). There, the

court concluded that a prepetition assignment of accounts receivable did not include receivables that were generated postpetition. Id. at 726. That court, however, held only that postpetition accounts receivable were not proceeds of prepetition accounts receivable. Id. at 726-27. The court expressly did not consider whether postpetition accounts receivable were proceeds of any other prepetition property on which the creditor held a valid lien. Id. at 727 ("No evidence concerning this issue has been offered to the court. Additionally, by agreement of the parties, this issue is not before the court at this time."). Here, in contrast, I consider accounts receivable as proceeds of any prepetition collateral that the Security Agreement encompasses.

## II.
## The Security Interest in Contract Rights Attached When the Contracts Were Signed.

The dispositive question that remains is whether PFC's security interest in the Debtor's contract rights attaches on the dates the contracts are signed or whether it attaches later, on the date of a notice to proceed. Under Georgia law and under the terms of the contracts at issue, PFC's security interest attached on the dates the contracts were signed.

"Fundamental to a secured party's acquisition of a security interest in property of the debtor is that the debtor have rights in the collateral." Anthony v. Cmty. Loan & Inv. Corp., 559 F.2d 1363, 1368 (5th Cir. 1977) (internal quotation marks omitted).[5] The debtor must have rights in the collateral before a security interest becomes enforceable. O.C.G.A. § 11-9-203(b)(1). At the point the security interest becomes enforceable, the security interest attaches. O.C.G.A. § 11-9-203(a).

Here, Diversified Traffic acquired rights in the collateral, i.e., contract rights, when each contract was signed. By their terms, each of the contracts sets out the entire agreement between the parties, so that no additional agreement and thus no additional rights could be signified by the issuance of a notice to proceed. Thus when Diversified Traffic signed the highway striping contracts and thereby acquired rights in the collateral so that a security interest was enforceable, that was the point at which PFC's security interest attached.

---

[5] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on Sept. 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

### III.
### No Equitable Considerations Have Been Asserted.

Notwithstanding the provisions of the security agreement and applicable nonbankruptcy law, the court may limit the extent of the lien on postpetition accounts receivable "based on the equities of the case." See 11 U.S.C. § 552(b)(1). "This 'equities of the case' provision is intended to prevent secured creditors from receiving windfalls and to allow bankruptcy courts broad discretion in balancing the interests of secured creditors against the general policy of the Bankruptcy Code, which favors giving debtors a 'fresh start.'" In re Patio & Porch Systems, Inc., 194 B.R. 569, 575 (Bankr. D. Md. 1996). Here, Diversified Traffic has not asserted any equitable argument in favor of invalidating the extension of PFC's prepetition security interest to postpetition proceeds.

### CONCLUSION

PFC's security interest attached prepetition to the Debtor's contract rights under the following disputed contracts, all of which were signed prepetition: Bulloch/Candler Contract,

12

Tattnal Contract, and Pierce Contract.[6] PFC thus has a valid security interest in accounts receivable generated under these contracts as proceeds of prepetition collateral. PFC has no security interest in accounts receivable generated under the contracts that are undisputed: Ben Hill-Turner Contract, Colquitt Contract, Cook Contract, Dooly Contract, Tift Contract, and Chatham Contract.

**IT IS THEREFORE ORDERED** that the Motion to Reject Security Agreement and Financing Statement, or in the Alternative, to Avoid Lien is **DENIED IN PART** and **GRANTED IN PART**.

John S. Dalis
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 21st day of May, 2010.

---

[6] I infer a prepetition signing date for the Pierce Contract from the notice to proceed before me, which is dated only three days after the filing of the bankruptcy petition.